IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

David Emond,

               Plaintiff,

-vs-

Pridgeon & Clay, Inc., et al.,

               Defendants.

Case No. 1:05 CV 553

MEMORANDUM OPINION
AND ORDER

JUDGE JACK ZOUHARY

## INTRODUCTION

Defendant Pridgeon & Clay (P&C) has moved for summary judgment against Defendant National Material (National) on a Cross-Claim for contractual indemnity (Doc. No. 43). National also moves for summary judgment against P&C. These Motions are based upon a Purchase Order between P&C and National dated April 1, 2005 and which provides in pertinent part in Paragraph 8:

> Indemnification (General).
>
> Seller [National] shall indemnify and hold Buyer [P&C] and its agents harmless from any claims, liabilities and expenses, including but not limited to actual attorney fees, sustained by Buyer or its agents and arising out of Seller's obligations under this purchase order, including but not limited to defects in any goods or services supplied by Seller, except for any claim, liability or expense arising solely from Buyer's negligence.

National also moves for summary judgment against Plaintiff. The First Amended Complaint against both P&C and National (Doc. No. 4) alleges that each was negligent -- National for improperly loading steel coils on, and P&C for improperly unloading the steel coils from, Plaintiff's

truck which resulted in Plaintiff's injury. A Purchase Order between Defendants required that "all stand up coils must have a minimum spacing of 6" between coils," and it is undisputed that Plaintiff's truck was loaded with upright coils stacked one against the other without any space between them.

## BACKGROUND FACTS

The Purchase Order is a blanket purchase order created by P&C to address its long-term needs for steel coil from National. The custom and practice of the parties was that a P&C purchasing agent would contact a National sales person to address a specific purchase which would be followed up with a revised purchase order, such as the one in this case (which is Revision No. 15). The 6-inch spacing requirement had appeared in prior purchase orders but had generated no discussion because there had been no prior requests for steel coil of this particular width, dimension and weight. National's position is that it rejected the 6-inch spacing term and that P&C acknowledged that rejection and agreed to a modification.

Plaintiff was aware of the manner in which the steel was loaded on his truck. However, he believed that P&C had a "C-hook" for removing the coils and claims that had he known P&C did not have a C-hook he would not have had the coils stacked "so close together." Instead, P&C utilized a dual-arm lifter device and, as Plaintiff was sliding the first coil out and away from the other two, the coil slipped and fell, pinning him down on the trailer and crushing his leg.

In January 2005, National advised that it would not load the coils with 6-inch spacing. Tom Verduin at P&C acknowledged discussion that National would not load coils with 6 inches of spacing because the coils are too narrow and National felt it would be a transportation safety hazard (Doc. No. 99, Exhibit 8). Verduin advised National that narrow coils less than 13,000 pounds (such as these)

2

could be skidded (laid flat on their side), but if loaded in an upright position than they must be banded together with spacing. *Id.*

Nonetheless, P&C's receiving department continued to complain about the manner in which the tall, narrow coils were loaded and Verduin raised the issue again, and was told again that National refused to load these coils in this manner because of a safety hazard. Indeed, the day before this accident, the P&C receiving department forwarded to Verduin a complaint that the coils "loaded all together with no space in-between . . . is very unsafe to unload . . . and we almost tipped over four coils trying to unload . . . we need at least a 6" gap . . ." (Doc. No. 99, Exhibit 3). Nonetheless, P&C continued to accept delivery. The dual-arm coil lifter on the crane which P&C used to unload these coils was not designed to unload coils of steel butted together, but only to lift single coils.

It is unclear from the Record what information National had about the equipment used to unload the steel coils. P&C Safety Director, Andy Garceau, testified the method used by his personnel to unload the coils in question was unsafe and that a C-hook device was more appropriate for unloading these coils. It is also undisputed that P&C's crane operator, Victor Solorzano, was not certified in violation of not only P&C rules but also MIOSHA regulations.

## DISCUSSION

The Court finds that neither P&C nor National is entitled to summary judgment on the issue of indemnification. There is a question of fact whether P&C waived the 6-inch spacing requirement. Specifically, there is evidence that P&C, by its agent Verduin, agreed to an alternate method to load the coil of this particular size and dimension. P&C knew of National's objection and knew that National was not complying with the 6-inch spacing request; National knew that P&C preferred the

coils, if upright, with the 6-inch spacing. There therefore is a question of fact of what the parties intended.

In *Klas v. Pearce Hardware & Furniture Co.*, 202 Mich. 334, 339 (1918), the Michigan Supreme Court held that waiver is an issue best suited for a jury:

> Waiver is a mixed question of law and fact. It is the duty of the court to charge and define the law applicable to waiver, but it is the province of the jury to say whether the facts of the particular case constitute waiver as defined by the court.

Further, in *Quality Products. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362 (2003), the court held that more than mere silent acquiescence is required to demonstrate waiver of a contract provision. A party seeking to establish waiver must show assent to, or some act in furtherance of, the waiver by the party against whom the waiver was sought. *Id*.

In the instant action, neither party has presented evidence sufficient to remove this issue from the province of the jury. Accordingly, Defendants' cross-Motions on the issue of waiver are both denied.

Furthermore, the indemnity provision shifts responsibility to National unless liability arises "solely" from P&C's negligence. There is also a disputed issue of material fact of whether Plaintiff's injury arose from either or both of these Defendants (or Plaintiff's own negligence). National has provided evidence that this unfortunate accident was the result of improper unloading by P&C personnel. P&C tries to shift that responsibility by arguing that the coils were not loaded pursuant to the Purchase Order which required a spacing between coils, spacing necessary to safely unload the coils. The Record therefore clearly creates an issue of fact and a jury will need to examine negligence among all the parties.

**CONCLUSION**

The Court finds there are disputed issues of material fact which preclude either Defendant from obtaining summary judgment on the issue of whether the indemnification in the Purchase Order applies to the accident which is the subject matter of this lawsuit. Therefore, the competing Motions for Summary Judgment (Doc. Nos. 82-85, 92) are denied. National's Motion for Summary Judgment against Plaintiff (Doc. Nos. 82-83, 92) is also denied because there is disputed fact whether National breached its duty to safely load the vehicle for Plaintiff to unload.

IT IS SO ORDERED.

                                                                       s/ *Jack Zouhary*
                                                                       JACK ZOUHARY
                                                                       U. S. DISTRICT JUDGE

                                                                       July 10, 2007